IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN BAMBENEK, LISA KENDALL, JOHN PHILLIPS, REFORM CHAMPAIGN COUNTY, an unincorporated political association, And DECATUR DISPENSARY PROJECT, An unincorporated political association )<br><br>Plaintiffs, )<br><br>v. )<br><br>JESSE WHITE, in his official capacity as Illinois Secretary of State, KIM ALTHOFF, in her official capacity as the Decatur City Clerk, AARON AMMONS, in his official capacity as Champaign County Clerk, JOSH TANNER, in his official capacity as Macon County Clerk, and WILLIAM J. CADIGAN, KATHERINE S. O'BRIEN, LAURA K. DONAHUE, CASSANDRA B. WATSON, WILLIAM M. MCGUFFAGE, in their official Capacities as Board Members of the Illinois State Board of Elections, )<br><br>Defendants. | No. 3:20-cv-3107 |

**MEMORANDUM IN SUPPORT OF DEFENDANT JOSH TANNER, MACON COUNTY CLERK**

**I.    INTRODUCTION**

The Plaintiffs have filed an action to enjoin or modify the Illinois Petition Collection requirements for initiative referendums to be placed on the November 3, 2020 general election ballot and to enable and acquire the Defendant, Josh Tanner as the clerk to address the ballot concerns of the Plaintiff. The Plaintiffs rely upon the need for this relief due to the coronavirus and Governor Pritzker's corresponding shelter-in-place emergency order. The Plaintiffs refer to Governor Pritzker's corresponding shelter-in-

place orders. On March 20, 2020 entered the one and only shelter-in-place order for the state of Illinois.

## II. ARGUMENT

### A. COVID19 EXECUTIVE ORDER(S) UNCONSTITUTIONAL
(No Likelihood of Success on the Merits)

Plaintiffs seek relief, including a monetary judgment for attorney's fees pursuant to 42 USC Section 1988(b) against Macon County Clerk, Josh Tanner, on the basis that Tanner is charged with enforcement of Election Code provisions. No assertion is made that the Election Code is unconstitutional, facially. The relief Plaintiffs seek is based on the alleged interference with Election Code compliance caused by Pritzker's COVID19 Executive Order(s), issued and threatened. However, Plaintiffs do not challenge the Executive Orders, Orders which are outside the authority of Tanner to enforce. Plaintiffs elect to submit voluntarily to the Executive Order(s), issued and threatened. Plaintiffs should not succeed in obtaining the relief requested against Tanner because the source of their alleged injury is the unconstitutional Executive Order(s), issued or threatened.

The Executive Orders, actual or threatened, to have effect through May 31, 2020 [EO for purposes of this Section of Memorandum] were issued by Pritzker asserting enablement by the Illinois Emergency Management Act, 20 ILCS 3305 [IEMA]. The EO claims disaster under Section 4 of the IEMA finding a public health emergency presented by the novel COVID19 infection presented a "high probability" for a "large" number of deaths in the affected area. The Governor declared the affected area for the disaster to be all 12.67 million Illinois citizens covering the entirety of the State of Illinois. The IEMA authorizes the Governor to exercise emergency powers under Section 7 of the IEMA for a period not to exceed thirty (30) days. The Governor has exercised emergency powers

under Section 7(2) (8) and (12) to impose a stay at home mandate for all movement except for essential travel or essential work. In other words, an order for home detention for non-essential activity.

In addition to the impaired constitutional rights for which Plaintiffs claim injury (which are not restated herein), the EO deprive citizens of the free exercise of fundamental rights, to include the right to earn a livelihood in one's profession of choice and the liberty of free movement. [See Memorandum of Illinois State Appellate Prosecutor attached as Exhibit B to the Answer and incorporated herein]. Assuming such deprivation of fundamental rights may be tolerated constitutionally, to any extent, the deprived citizen is entitled to due process. [Illinois Constitution, Art. 1, Section 2; United States Constitution, Fifth and Fourteenth Amendments.] Compliance with the statutory requirements in the IEMA represent a beginning point for evaluating due process.

At this point in time, the exercise of powers by the Governor to mandate home detention for non-essential activity after 30 days is not enabled and exceeds the statutory grant of emergency powers. Thus, a denial of due process to the citizen whose liberty is deprived. Here, Plaintiffs, as petitioners in connection with election activity cannot support an inability to collect signature by asserting the restrictions of an unconstitutional or null EO. If Plaintiffs elect to acquiesce to the EO, the injury they claim is imposed voluntarily and they are entitled to no relief against Tanner.

The complaint against Tanner is limited to Macon County, or more specifically, the City of Decatur, IL. The EO declaring the "affected area" as the entire State of Illinois, without findings specific the area at issue here, the City of Decatur, Macon

County, is an overly broad exercise of the emergency powers that deny a Macon County, City of Decatur, citizen due process. See Exhibit "B" to the Answer which states:

> When the legislative branch, let alone the executive branch, infringes on fundamental constitutional rights – e.g. the freedom of assembly and religion – the State action is subject to strict scrutiny, which means that the State action must be *narrowly tailored to the compelling State interest*. Such action is narrowly tailored if it targets and eliminates no more than the exact source of the "evil" it seeks to remedy, and the State must utilize the least restrictive means consistent with the attainment of its goal. *In re D.M,.* 214 Ill. 2d 289, 304 (2005); see also *Cantwell v. Connecticut*, 310 U.S. 296 (1940) (discussing the First Amendment as applied to the States by the Fourteenth Amendment) and *Trump v. Hawaii*, 138 S. Ct. 2392 (2018) (discussing executive authority, upholding the so-called "travel ban," and finally overturning *Korematsu v. United States*, 323 U.S. 214 (1944) (forcible relocation of American citizens)). If undertaken at all, this action requires a scalpel, rather than hammer and sickle. See *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (although protections for religious freedoms are not absolute, the government's action must be narrowly tailored to the danger presented).

In fact, there is no indication that the Governor ever has made any regional or area findings to inform a narrowly tailored exercise of emergency powers under the IEMA. To the contrary, Governor Pritzker has not exercised his powers surgically with the support of high probability evidence when declaring affected areas. Pritzker has covered the entire State of Illinois with an iron blanket forcing the factually unaffected to the same deprivations as the likely affected population. An unconstitutional detention or deprivation of one individual is not remedied by depriving all citizens under your jurisdiction. In fact, State Circuit Court already has declared the deprivations of one citizen under the EO to be unconstitutional and exceeding statutory enablement. Bailey v. Pritzker, See Exhibit "A" to the Answer.

Section 4 of the IEMA is vague in terms of defining the requisite standards for declaring a "disaster" that authorizes the deprivation of fundamental rights. The required finding for a "high probability" of a "large" number of deaths is not well-defined. "High probability" is sufficiently informative. However, "large" is a comparative term for which there is no base. "Large" compared to what? To deprive citizens of fundamental rights, the IEMA is too vague to satisfy the requirement of due process.

The Governor claims authority to classify essential from non-essential activity/employment as a power authorized under Section 7. The scope of power claimed by the Governor is profound and requires scrutiny at some level, rational or strict, to assure that similarly situated activities are not arbitrarily classified to protect against equal protection denial or special legislation benefit. [*Illinois Constitution*, Art. 1, Sec.2; *United States Constitution*, XIV amend.] As applied here, the social distancing encroachment presented by a petition circulator (non-essential) does not exceed the social distancing encroachment of a grocery store check-out clerk (essential) to justify the classification. The EO are exercises of arbitrary classifications picking winners and losers in the essential/non-essential pageant. The consequences, the deprivation of an individual's fundamental right to earn a living or to move freely.

Here, Plaintiffs' complaint is with the EO and Tanner has no responsibility for the enforcement thereof and cannot be liable for attorney's fees under Section 1988. Plaintiffs' election to submit to the unconstitutional EO is the source of the alleged harm. Plaintiffs' alleged harm, if any, may be avoided by the determination that the EO are not enforceable to restrain the Plaintiffs circulation of petitions in Macon County, City of Decatur.

B. NO IRREPARABLE HARM TO PLAINTIFFS

This portion of the Memorandum of Law will only address the Plaintiffs' effort to have a question of public policy initiative referendum on the Macon County ballot in November 2020.

The Complaint herein alleges that the Plaintiffs on behalf of the Decatur Dispensary Project, namely Lisa Kendall and John Phillips, must submit 1,935 signatures to the Decatur City Clerk by August 3, 2020. See paragraph 41 of Petitioners' Complaint. The Declaration signed by John Phillips claims that he has collected 150 signatures and that Lisa Kendall has collected 930 signatures for a total of 1,080 signatures toward the 1,935 required signatures. Consequently, based on Plaintiffs' declaration they are in need of 855 signature by August 3, 2020.

As set forth in Part A above it is the position of Josh Tanner, Macon County Clerk that any future stay-at-home orders by Governor Pritzker are unconstitutional, lacks statutory support and unenforceable. Therefore, beginning May 1st John Phillips and Lisa Kendall have until August 3rd to collect the remaining 855 signatures.

There are 91 days between May 1st and July 31st. At the rate accumulating 10 signatures per day the Plaintiffs John Phillips and Lisa Kendall would accumulate 1,990 signatures; 51 signatures more than necessary. Therefore, if this Court finds that it is unconstitutional for Governor Pritzker to extend the "stay-at-home" order to May 31, 2020 then the requirement to adhere to the Illinois election Code is reasonable and not a burden.

In the Plaintiffs' Complaint they have attached Judge Pallmeyer's Order. The case before Judge Pallmeyer and the issue of a question of public policy referendum are apples

and oranges. Before Judge Pallmeyer the Plaintiffs' were seeking to add candidates, who sought to hold an elected office in the November 3, 2020 election. In the case before Judge Pallmeyer Plaintiffs' argument was that an established political party faces lower requirements for their candidates to appear on the ballot. Second, that the Governor's emergency order foreclosed the Plaintiffs adequate time to secure the thousands of signatures necessary to appear on the ballot.

Judge Pallmeyer stated that she relied upon the authority in Anderson v. Celebrezze 460 US 780 (1983) and Burdick v. Takushi, 504 US 428 (1992) for substantial portion of the legal reasoning of her decision. In her Memorandum Opinion Judge Pallmeyer stated that in determining the question before the Court would apply the framework articulated in Anderson 460 US 780 and Burdick 504 US 428. If the burden on the Plaintiffs' constitutional rights is severe, state's regulation must be narrowly drawn to advance a compelling state interest. Stone v. Board of Education Commissioners of the City of Chicago 750 F. 3d 678, 681 (7 Cir 2014) quoting Burdick 504 US at 434. But alternatively, if the burden is merely reasonable and nondiscriminatory the government's legitimate regulatory interests will carry the day. Stone F. 3d at 681 quoting Burdick 504 US at 434.

Since any future stay-at-home orders by Governor Pritzker lack statutory authority, are unconstitutional, and are unenforceable the Plaintiffs in this case do not face a severe burden to comply with the state's regulation. This is not only the argument of Macon County Clerk, Josh Tanner, this is the position of the Illinois Appellate Prosecutor's office and the finding by the Circuit Court of the 4th Judicial Circuit in Clay County, Illinois.

The relief sought by Plaintiffs Kendall and Phillips is to be relieved of the standard requirement to obtain 1,935 signatures on or before August 3, 2020. Based on simple math, this ballot restriction is reasonable, and nondiscriminatory for an advisory referendum that has no binding effect on the Decatur City Counsel or the residents of Macon County.

The ballot question that Plaintiffs are seeking is:

**Should the City of Decatur allow the sale recreational cannabis and cannabis hyphen infused products to 21 and older   Yes or No**

The cannabis sale issue in Decatur, Illinois were discussed by the Decatur City Counsel for several months. The Plaintiffs have already had an advisory referendum during the March 2020 election. At the request of the Plaintiffs the same advisory referendum question appeared on the ballot for the voters in Decatur Township on March 17, 2020. See Josh Tanner Declaration with Exhibits.

The Plaintiff will suffer no irreparable harm if the injunction is denied. First, they have plenty of time to fulfill the Illinois Election Code requirements for the advisory question to be placed on the November ballot. Second, and more importantly the question they are seeking to have placed on the ballot is simply a nonbinding referendum question. In other words, the results of that ballot question are nothing more than conversation at the local coffee shop. The City of Decatur and its elected official have no obligations to reverse or modify their decision to sell cannabis infused products in the City of Decatur; therefore there is no irreparable harm to the Plaintiffs.

## C. BALANCE OF HARDSHIP

A nonbinding referendum question is not remotely similar to a new party independent candidate placed on an electoral ballot. Therefore, the Plaintiffs reliance on

Judge Palleyers ruling is misguided. Furthermore, if the Plaintiffs are foreclosed from placing this question on the November ballot then they may pursue the same referendum in the next election without harm to the Plaintiff. In other words, obviously, the Plaintiff want to see marijuana infused products sold in the City of Decatur. The City of Decatur does not currently allow the sale of cannabis infused products sold in the City of Decatur. Cannabis infused products purchased outside of the City of Decatur may still be consumed in the City of Decatur. There is simply not a legal dispensary in the City of Decatur. The ballot questing is simply advisory. The true remedy for Plaintiffs is to seek and support candidates to run for the Decatur City Council that support the sale of cannabis products in Decatur.

### D. GRANTING THE RELIEF WILL NOT SERVE THE PUBLIC INTEREST

Macon County consists of numerous municipalities. The surrounding municipalities in Macon County may, based on the decision of their elected leaders, opt to allow recreational cannabis dispensaries. If they do so and a marijuana dispensary opened in a municipality surrounding Decatur, then the public interest is served. Alternatively, if those elected officials likewise follow the path of Decatur and prohibit the opening of a dispensary to sell recreational cannabis and cannabis infused products then the public interest likewise is served because the respective elected officials opted out of cannabis sales. Since the ballot question is simply advisory the true public interest sought by the Plaintiffs is recreational cannabis dispensaries in Decatur, Illinois or nearby. To achieve that public interest the Plaintiffs need to secure the approval of the municipality local government. A nonbinding advisory referendum does not achieve their true public interest.

         JOSH TANNER, Defendant

       BY:  FEATHERSTUN, GAUMER,

       STOCKS,  FLYNN & ECK, LLP,

        BY:   /s/ Edward F. Flynn
           Edward F. Flynn

Edward F. Flynn
ARDC No. 06192240
Jerrold H. Stocks
ARDC No. 06201986
FEATHERSTUN, GAUMER, STOCKS,
FLYNN & ECK, LLP
101 S. State St., Suite 240
P. O. Box 1760
Decatur, IL  62525
Telephone: (217) 429-4453
Fax: (217) 425-8892
e-mail:  jstocks@decatur.legal
   eflynn@decatur.legal

## CERTIFICATE OF SERVICE

  I hereby certify that on April 29, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central District of Illinois, Urbana Division, by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

| | |
|---|---|
| samcahnman@yahoo.com | jrobinson@decaturil.gov |
| Samuel J. Cahnman | John Robinson |
| 915 S. 2nd St | City of Decatur |
| Springfield, IL 62704 | 1 Gary K Anderson |
| | Decatur, IL 62523 |

              _/s/ Edward F. Flynn_____
                Edward F. Flynn

Edward F. Flynn
ARDC No. 06192240
Jerrold H. Stocks
ARDC No. 06201986
FEATHERSTUN, GAUMER, STOCKS,
FLYNN & ECK, LLP
101 S. State St., Suite 240
P. O. Box 1760
Decatur, IL  62525
Telephone: (217) 429-4453
Fax: (217) 425-8892
e-mail:  jstocks@decatur.legal
   eflynn@decatur.legal